**Appeal of CHARLES R. GOW CO.**      **Docket No. 1542.**

Upon the evidence produced the taxpayer is not entitled to classification as a personal service corporation.

Submitted March 24, 1925; decided April 15, 1925.

*John F. Malley*, Esq., and *John N. O'Donohue*, Esq., for the taxpayer.

*J. A. Adams*, Esq., for the Commissioner.

Before Graupner, Lansdon, and Smith.

This appeal involves a deficiency in the amount of $4,940.54, due to the denial of personal service classification of the taxpayer by the Commissioner. Oral and documentary evidence was presented at the hearing and from such evidence the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer was incorporated under the laws of Massachusetts, with its principal place of business in the City of Boston, on January 25, 1918, for the purpose of taking over the engineering and contracting business theretofore conducted by Charles R. Gow and his brother, Fred W. Gow, as a copartnership.

2. Charles R. Gow is an underground engineer of long experience and high standing in Boston and its vicinity. In January, 1918, he was called upon by the United States Government to volunteer his professional services in connection with construction work which had then been undertaken by this Government for the furtherance of its part in the World War. Gow had been engaged in specialized underground engineering work since 1914 in Boston, in partnership with his brother, Fred W. Gow. He was the inventor and patentee of a type of caisson which was designed to be used in the construction of foundation piers or footings in certain localities in Boston where soil conditions prohibited the erection of ordinary foundations. The partnership and its successor, the taxpayer, engaged to construct foundation piers or footings which required the use of the apparatus invented by Gow. This work required the use of labor and materials, as well as the employment of the patented caisson and the technical skill of Gow. For this work the taxpayer owned motor trucks, iron or steel cylinders, pumps, derricks, and other tools and equipment.

3. Fearing that his work for the United States Government would take him away from Boston and that he would not be available for supervision and consultation, and that the partnership might not have any net income but might sustain heavy losses, for which he would be personally responsible, Gow formed a corporation to take over the business. He subscribed for 80 per cent of the capital stock; his brother and partner 10 per cent; and Harold B. Robinson, a trusted employee who had been with him many years, subscribed for the remaining 10 per cent.

4. The entire capital stock, amounting to $10,000 par value, all common, was issued to the following persons and was held by them without change during the year 1918:

| | |
|---|---:|
| Charles R. Gow | $8,000 |
| Fred W. Gow | 1,000 |
| Harold B. Robinson | 1,000 |
| | 10,000 |

The consideration for which this capital stock was issued was as follows:

| | |
|---|---:|
| Cash | $5,000 |
| Plant | 5,000 |
| | 10,000 |

5. Upon the acceptance of his services by the United States Government, Gow was commissioned as a Major in the Construction Corps and assigned to supervise construction at the Army Base at South Boston, and his entire term of service for the Government, which continued throughout the year 1918, was spent there. His headquarters were about a mile and a half from the office of the taxpayer. During his entire term of service, his brother, Fred W. Gow, who was president of the taxpayer, visited him substantially every working day at the Army Base, and spent an hour or more of each day with him, considering the various engineering projects on which the company was engaged, and discussing the difficulties encountered and the best methods to be used in meeting them. At some of these conferences, Fred W. Gow brought the samples of underground borings for advice as to the nature and character of the underground strata and the reports and recommendations thereon to be made to the company's clients. Whenever it appeared necessary, Gow personally went out and examined properties and locations. He was frequently called on the telephone, when difficulties arose which Fred W. Gow or Harold B. Robinson found themselves unable to meet. In this way Gow gave an average of about two hours per day of his time to the service of the taxpayer during the year 1918.

6. The business conducted by the partnership since 1914, and by the taxpayer in 1918, consisted of three different branches: (a) making underground test borings in the soil to obtain samples and advising as to the nature of the strata encountered and as to the best foundation methods to be used; (b) professional advice on general questions of underground engineering; and (c) designing, contracting for, and installing a special type of foundation support which required for its installation a very intimate knowledge of the soil conditions, engineering skill, and continuous close supervision of the process by a skilled underground engineer to solve the various problems which the method entailed. For the two branches of the work first mentioned the taxpayer received professional fees and for the third branch it received payments based upon the cost of the labor and materials, plus a percentage. A small trained corps of experienced workmen was constantly employed to facilitate doing the manual labor necessary in installing the caissons and constructing the special foundation piers or footings, and was regularly retained on the pay roll, in order that their trained services might be continually at the disposal of the taxpayer.

The gross income of the taxpayer from services and operations for the year 1918 was_____ $165,185.53

Expenses for the year show:

| | | |
|---|---|---|
| Pay rolls_____ | $87,367.65 | |
| Materials and supplies_____ | 40,942.39 | |
| Teaming_____ | 3,175.97 | |
| Officers' salaries_____ | 4,202.00 | |
| Rents, insurance, taxes, and sundry items____ | 8,932.51 | |
| | | 144,620.52 |

Leaving a net income for 1918 of_____ 20,565.01

61359°—26——65

Salaries were paid to the stockholders as follows:

| | |
|---|---:|
| Fred W. Gow | $2, 546 |
| Harold B. Robinson | 1, 656 |
| | 4, 202 |

No salary whatever was paid to Gow. He received only the dividends paid on his stock as compensation for such services as he rendered.

7. The taxpayer filed an income-tax return as a personal-service corporation for the calendar year 1918. The Commissioner disallowed the claim of the taxpayer to personal-service corporation classification, found that its net income for the calendar year 1918 was $20,565.01, and mailed a deficiency letter to it, dated November 17, 1924, proposing the assessment of income and profits taxes upon the said income amounting to $4,940.54.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

GRAUPNER: The taxpayer asserts that it is entitled to personal-service classification and contends that it comes within the definition of a "personal service corporation" contained in section 200 of the Revenue Act of 1918. This definition provides that such a corporation is one "whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *."

The evidence shows that Charles R. Gow, the owner and holder of 80 per cent of the capital stock, organized the taxpayer corporation in anticipation of leaving the business and entering the Army and to relieve him from personal liability for losses which might be sustained during his absence. It may not be said that he devoted his entire time and attention to the affairs of the taxpayer, though he did, to some degree, regularly engage in the active conduct of the affairs of the corporation. However, it is apparent that capital was a necessary and material income-producing factor. Therefore the taxpayer is not entitled to personal service classification.